UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JILL GREWCOCK,
    *Plaintiff*,

v.

YALE-NEW HAVEN HEALTH SERVICES
CORPORATION,
    *Defendant*.

No. 3:16-cv-00452 (JAM)

**RULING ON MOTION *IN LIMINE* AND EVIDENTIARY OBJECTIONS**

Plaintiff Jill Grewcock worked for defendant Yale-New Haven Health Services Corporation until the termination of her employment in April 2015. Plaintiff alleges claims for gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the Connecticut Fair Employment Practices Act. The factual background of this case has been described in detail in the Court's ruling on defendant's motion for summary judgment. *See* Doc. #30; *Grewcock v. Yale New Haven Health Servs. Corp.*, 2017 WL 6459501 (D. Conn. 2017). Now on the eve of trial, defendant has filed a motion *in limine* (Doc. #35) and has raised a number of objections to plaintiff's evidence as described in the parties' joint trial memorandum (Doc. #48). I will first address defendant's motion *in limine* and then address each of defendant's objections to plaintiff's evidence.

*Back pay and front pay*

Defendant moves to preclude any evidence or argument at trial before the jury related to back pay or front pay. At the pretrial conference, the parties agreed that the Court—rather than the jury—should determine any entitlement of plaintiff to front or back pay and that plaintiff will present evidence of front pay and back pay in a separate proceeding before the Court in the event that the jury finds defendant liable to plaintiff. Accordingly, I will grant defendant's motion *in*

1

*limine* by agreement of the parties. Because evidence of back pay and front pay will not be presented to the jury, defendant's objection to plaintiff's seeking to admit job search materials (Plaintiff Ex. 27) is overruled as moot.

### *Dr. Kellogg letter and testimony*

Defendant objects to the proposed testimony of plaintiff's physician, Dr. Mary Griffin Kellogg, and to the admission of an undated letter she wrote to defendant on plaintiff's behalf (Plaintiff Ex. 17) requesting that plaintiff be allowed to use her own office for expressing breast milk. The letter was "cc" to plaintiff and two other hospital supervisors. I will largely sustain defendant's objection, except to the extent that I will allow plaintiff and any other necessary witness to testify about the fact that the letter was sent, the fact that it was a letter of complaint about the restrictions on plaintiff's pumping, and the fact that it requested relief for plaintiff.

The letter recites a detailed version of facts that is apparently based on what plaintiff told Dr. Kellogg about her working conditions and how she was denied the right to use her office for breast pumping activity. There is nothing in the letter to suggest that Dr. Kellogg has any firsthand knowledge of the events. For reasons I have elsewhere discussed at length, a plaintiff's own out-of-court statements are inadmissible hearsay if offered by a plaintiff for the truth of the matters stated and even if a plaintiff is available at trial to be cross-examined about her out-of-court statements. *See DeAngelis v. City of Bridgeport*, 2018 WL 429156, at *6 (D. Conn. 2018). Moreover, Dr. Kellogg's out-of-court statements in the letter about plaintiff's out-of-court statements are double hearsay. In addition, Dr. Kellogg's letter makes policy and legal arguments about plaintiff's right to pump breast milk. Such policy and legal arguments by a doctor are not proper evidence for a jury to consider at trial. Nor was Dr. Kellogg ever designated as an expert witness in this case.

Although the specific contents of the letter itself are not admissible for these reasons, the fact of a complaint letter being sent is relevant to a non-hearsay purpose of showing that plaintiff (whether directly or through her doctor) was complaining about the hospital's restrictions. Accordingly, plaintiff may testify that she asked Dr. Kellogg to write the letter requesting that plaintiff be permitted to use her office to pump breast milk. To corroborate plaintiff's claim that such a letter was indeed written, plaintiff's counsel may mark the letter as an exhibit for identification purposes only and have plaintiff identify the exhibit (and/or to show the document for identification purposes to Patricia Burke or other witnesses as well).

The fact of the complaint letter being sent and the request that it made on plaintiff's behalf is relevant to plaintiff's retaliation claim. It is, however, of limited probative value for plaintiff's retaliation claim, because the complaint does not predicate plaintiff's retaliation claim on the basis of Dr. Kellogg's letter. Instead, the complaint predicates the retaliation claim solely on plaintiff's own filing of a grievance in December 2014. Doc. #1 at 4 (¶ 20), 5 (¶ 29). Nevertheless, to the extent that the jury must ultimately decide why the hospital terminated plaintiff's employment, any complaint she made about restrictions on her breast pumping activity is relevant evidence at trial.

As to whether Dr. Kellogg should be permitted to testify as a trial witness, the Court will not permit Dr. Kellogg to testify about plaintiff's specific hearsay version of events as set forth in the letter. Nor may Dr. Kellogg testify about any of the policy or legal arguments she recites in the letter. Unless Dr. Kellogg's testimony is shown to be needed for any other purpose and on the assumption that defendant will not contest the fact that the complaint letter was sent by Dr. Kellogg, the Court will preclude Dr. Kellogg's testimony as cumulative.

*__Post-termination revision of plaintiff's job description__*

Defendant objects to the admission of a revised version of plaintiff's job description (Plaintiff Ex. 3) on the ground that the job description was revised after plaintiff's termination and constitutes a subsequent remedial measure that is not admissible under Fed. R. Evid. 407. According to defendant, it fired plaintiff because she improperly accessed the medical file of a patient who was a relative of a hospital supervisor and who was admitted to the hospital for psychiatric reasons. Plaintiff contends that it was within her then-existing job description as a clinical bed manager to access that patient's medical file. Plaintiff's job description at the time of her termination stated that a "Clinical Bed Manager is responsible for oversight of *all* patient admissions, discharges and transfer activity while monitoring capacity both currently and prospectively" and "is the liaison between *all points of entry, [various staff], and inpatient bed resources throughout the institution*." Doc. #22-7 at 7, 12 (emphasis added). About three months after plaintiff was terminated, however, defendant amended the job description for the Clinical Bed Manager position to exclude from the job description responsibility for the psychiatric department to which the patient in question was set to be transferred. *Id.* at 18 (stating that Clinical Bed Manager's duties extended "throughout the institution *with the exception of YPH/Psych*") (emphasis added). As part of her effort to show that the hospital's reasons for her termination were pretextual, plaintiff intends to argue that the hospital's decision to amend the job description is inconsistent with its position at the time that she was terminated that she did not have authority to view the patient's record.

Rule 407 is entitled "Subsequent Remedial Measures," and it provides in relevant part that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove" that the defendant engaged in "negligence" or other "culpable conduct." Importantly, the rule does not purport to

4

bar a plaintiff from introducing any evidence at all about a defendant's inconsistent positions or conduct after it has engaged in the action that forms the basis for a plaintiff's lawsuit. Instead, the rule more narrowly requires a court to focus on whether evidence of the subsequent conduct "would have made an earlier injury or harm less likely to occur." *See also* Kenneth W. Graham, Jr., 23 *Fed. Prac. & Proc. Evid.* § 5284 (1st ed. Apr. 2017 update) (noting that "[a]lthough Rule 407 uses the phrase 'remedial measures' in its title . . . the nature of the activities within the scope of the rule is defined by the clause 'measures . . . which, if taken previously, would have made the event less likely to occur'" and that "while 'remedial measures' may be adequate as a shorthand description of the rule, its true scope can only be determined by a careful analysis of the text of the defining clause").

Although the rule has its most obvious application in cases of personal tort injury, the rule may also apply in discrimination cases like this one, because "[i]t would be perverse indeed if attempts to reverse discrimination could be used to condemn a defendant." *McLaughlin v. Diamond State Port Corp.*, 2004 WL 3059543, *3 (D. Del. 2004). On the other hand, if a defendant in a discrimination case takes a subsequent measure that does not make the injury or harm from discrimination less likely to occur, then Rule 407 does not bar evidence of the defendant's subsequent action. *Cf.* Graham, 23 *Fed. Prac. & Proc. Evid.* § 5284 (noting, for example, that Rule 407 would not bar evidence that a defendant took out insurance after an accident because such a measure would not make the accident less likely to occur and "is undertaken to protect the defendant, not to advance the safety of others"). Thus, as the Tenth Circuit has observed, "[a]cts which do nothing to make the harm less likely to occur should not be excluded under Rule 407." *Dow Chem. Corp. v. Weevil-Cide Co.*, 897 F.2d 481, 487 (10th Cir. 1990).

Here defendant contends that its revision to the job description makes it less likely that it would have terminated plaintiff's employment. Doc. #48 at 12. I don't agree. Had the amended job description been in place before plaintiff accessed the medical record in question, then defendant's termination of plaintiff's employment would have been *more*—not *less*—likely to occur, because then there would have been no question at all that plaintiff had no arguable job-related reason to access the patient's record.

Indeed, the only argument that defendant might make to show that its amendment of the job description would have made plaintiff's termination less likely to occur necessarily rests on an assumption that plaintiff would have refrained from accessing the patient's record if she had been on specific notice from the amended job description that the patient in question was outside her job responsibility. But of course this assumption contradicts defendant's entire theory of its defense: that plaintiff decided to access the record for personal reasons that had nothing to do with her job duties. Moreover, such an argument would go to the likelihood of *plaintiff's* change of conduct, not the likelihood of harm or injury to plaintiff from *defendant's* conduct.

The cases cited by defendant are readily distinguishable. In *Estate of Hamilton v. City of New York*, 627 F.3d 50, 53 (2d Cir. 2010) (*per curiam*), the Second Circuit considered the application of Rule 407 in an employment discrimination context involving proffered testimony that the employer defendant had changed its promotion review process in order to help prevent unsuccessful candidates from feeling that they had been unfairly passed over for promotion. The court concluded that this testimony "plainly runs afoul of Rule 407 of the Federal Rules of Evidence, which generally prohibits a plaintiff from introducing evidence of subsequent remedial measures taken by the defendant in order to establish the defendant's underlying liability." *Ibid.*; *see also Peck v. Hudson City Sch. Dist., Hudson, N.Y.*, 100 F. Supp. 2d 118, 122 (N.D.N.Y.

6

2000) (Rule 407 bars evidence of employer's subsequent change to its sex harassment policy in lawsuit claiming sex harassment).

These cases involve changes to aspects of employment policies that were designed to guard against claims of unlawful discrimination. The same does not hold true here. Defendant's change of the job description for a Clinical Bed Manager has nothing to do with its employment policies relating to discrimination or retaliation, much less to its policies governing breast milk pumping by nursing mothers.[1] Because defendant's amendment to the job description would not have made discrimination or termination of plaintiff's employment less likely to occur, defendant's objection to the revised job description (Plaintiff Ex. 3) is overruled.

### *Handwritten documents*

Defendant objects to admission of a handwritten, undated document regarding a "Missed Y Access Call" (Plaintiff Ex. 4) and a handwritten document regarding missed calls dated December 24 (Plaintiff Ex. 5) on grounds of hearsay and late production. Plaintiff has withdrawn these exhibits. Therefore, defendant's objection is overruled as moot.

### *Undated screenshot of email to David Wurcel*

Defendant objects to admission of a screenshot of an undated email from plaintiff to hospital vice-president David Wurcel (Plaintiff Ex. 10) on the grounds that it was disclosed late, cannot be authenticated as a transmitted email, and does not constitute best evidence. The exhibit lacks the ordinary indicia of an authentic email and appears to be merely an image of text typed into some kind of a word processing program.

---

[1] In *Stahl v. Bd. of Cty. Comm'rs of the Unified Gov't of Wynandotte Cty./Kansas City, Kan.*, 101 F. App'x 316, 321–22 (10th Cir. 2004), the Tenth Circuit concluded in dicta in an unpublished ruling that an employer's post-termination suspension of a physical fitness test requirement was barred by Rule 407 in a lawsuit involving a claim that the fitness test was a pretext for gender discrimination. I conclude that *Stahl* is distinguishable because the suspension of the fitness test there would have made the harm to the *Stahl* plaintiff less likely just as Rule 407 requires and in contrast to the facts of the case before me in which there is no tenable argument that the hospital's change of job description would made any discrimination against or the firing of plaintiff less likely.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff concedes that this exhibit was not produced during discovery. Defendant was deprived of the opportunity to depose plaintiff about the authenticity of this email or the circumstances surrounding its alleged drafting and transmission. Nor has plaintiff advanced a good reason for late disclosure. Accordingly, I will sustain defendant's objection.

### *Photographs of workspaces and bathroom*

Defendant objects to plaintiff seeking to offer photographs of hospital workspaces and the bathroom (Plaintiff Ex. 11) on the grounds that the photographs were taken one year after plaintiff ceased working for defendant and that the photographs were not timely disclosed in discovery. Plaintiff seeks to admit these photographs through Linda Konet, a former co-worker of plaintiff, who took the photographs in March 2016. Provided that Konet is able to authenticate the photographs as showing the areas in question in the approximate same condition as during the time of plaintiff's employment, I will allow these photographs because they are relevant to illustrating the events giving rise to plaintiff's claims. Defendant is well familiar with its own workspace and is not meaningfully prejudiced by the late disclosure of these photographs; it can cross-examine Konet about how accurately the photographs depict the relevant areas in the hospital at the time plaintiff worked there. Defendant's objection to the photographs is overruled without prejudice to renewal of any objection at trial based on the ability of Konet or any other witness to authenticate the photographs.

### *Plaintiff's diary*

Defendant objects to plaintiff's diary (Plaintiff Ex. 13). As noted above, plaintiff's prior out-of-court statements are not admissible for their truth, and plaintiff makes no genuine claim that the diary entries qualify for any exception to the hearsay rules (such as present sense impression) or that they are admissible for some non-hearsay purpose. Plaintiff is free to mark the diary as an identification exhibit at trial and to refer to the diary during her testimony for purposes of refreshing recollection as may be necessary. Defendant's objection to plaintiff's diary is sustained.

### *Use of phrase "hostile work environment"*

Defendant objects to the use of the phrase "hostile work environment" in an e-mail from plaintiff to James Staten dated April 13, 2015 (Plaintiff Ex. 20). The parties agreed during a telephonic status conference on January 29, 2018, that plaintiff is not advancing a hostile work environment claim in this case. *See* Doc. #38. Nevertheless, the phrase is well within common parlance such that an ordinary lay witness would use the phrase, and use of the phrase in the e-mail does not unfairly prejudice defendant in any way. Accordingly, I will overrule the objection.

### *CHRO answer, interrogatory answers, and defendant affidavits*

Defendant objects to the bulk admission of defendant's answer to the CHRO dated July 17, 2015 (Plaintiff Ex. 28), defendant's answers to interrogatories dated August 22, 2016 (Plaintiff Ex. 29), and two affidavits from Patricia Burke (Plaintiff Exs. 30 & 31). In accordance with the colloquy with counsel during the pretrial conference, plaintiff withdrew these exhibits without prejudice to the offering of any specific portion of such exhibits that are shown to be relevant and not otherwise barred by the rule against hearsay. If plaintiff wishes to proceed in this manner, she is requested to advise defendant and the Court as much as possible in advance

9

of what portion of such exhibits she intends to introduce. Accordingly, defendant's objection to these exhibits is overruled as moot.

## CONCLUSION

Defendant's motion *in limine* to preclude evidence and argument relating to damages for back pay and front pay (Doc. #35) is GRANTED by agreement of the parties. Defendant's objections to plaintiff's evidence as set forth in the Joint Trial Memorandum (Doc. #48) are overruled in part and sustained in part as set forth in this ruling.

It is so ordered.

Dated at New Haven this 4th day of March 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge